UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIE T. WALLACE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JOHN BUNCICH, Sheriff, *et al.*, )<br>)<br>Defendants. ) | NO. 2:02-CV-450 PS |

## OPINION AND ORDER

Willie Wallace, a prisoner currently committed to the Indiana Department of Correction, filed a complaint under 42 U.S.C. § 1983, alleging violation of his federally protected rights while he was confined at the Lake County Jail. Defendants are former Lake County Sheriff John Buncich and Custody Officers Julian Brown, C. Rodriguez, and R. Blanton, hereafter "custody officers." Mr. Wallace asserts that the custody officers used excessive and unnecessary force on him and that Sheriff Buncich authorized placing him in punitive segregation without due process as a result of the altercation.

Back in 2004, the parties filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The custody officers asserted they were entitled to summary judgment because Mr. Wallace did not exhaust his administrative remedies as to the excessive use of force claim. In the alternative, they argued that they were entitled to summary judgment on the merits. The Court granted the custody officers summary judgment on the basis of Plaintiff's failure to exhaust, and thus did not reach their argument on the merits. The Court denied summary judgment to Plaintiff and Defendant Buncich thus leaving him as the only Defendant in the case. This matter is before the Court on Plaintiff's Motion to Correct Error, Plaintiff's Motion Requesting Pretrial Scheduling Order, Defendant Buncich's Petition for

Review and Objection to Magistrate's Order of March 21, 2005, and Plaintiff's Motion to be Informed.

**I.      Plaintiff's Motion to Correct Error**

In his complaint, Mr. Wallace alleged that the custody officers used excessive and unnecessary force on him on September 30, 2001. The Lake County Jail had a formal grievance procedure, and the custody officers asserted that Mr. Wallace did not exhaust this administrative remedy. Mr. Wallace responded that he did file grievances dealing with this incident, but cited the Court to a grievance he filed on August 13, 2002, nearly a year after the alleged incident. The Court concluded that Mr. Wallace had not filed a timely grievance dealing with the custody officers' actions. Mr. Wallace's Motion to Correct Error now argues that his earlier submissions established a disputed issue of material fact as to whether he had filed a timely grievance.

**A**.      **Legal Standards Regarding Exhaustion of Administrative Remedies**

Pursuant to 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust available administrative remedies before bringing an action with respect to prison conditions. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). Section 1997e "applies to 'all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), quoting *Porter v. Nussle*, 534 U.S. 516 (2002). A prisoner who does not take a timely administrative appeal of a grievance denial has not exhausted his administrative remedies for purposes of § 1997e(a). See *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

  **B.**  **Did the Plaintiff Establish a Disputed Issue of Material Fact?**

  In support of their motion for summary judgment, the custody officers submitted the affidavit of Deputy Warden John Dragomer, who stated that the jail had a formal grievance procedure in effect when Mr. Wallace was confined there and stated some of the provisions of that procedure.  The jail's policy required a prisoner to execute a formal written grievance with the deputy warden within seventy-two hours of the incident.  If the deputy warden did not grant the relief requested, the prisoner could appeal the decision to the sheriff.  The sheriff's decision was the final step of the grievance procedure.  Dragomer further stated that duplicate copies of documents related to grievances are kept and maintained by the jail.  He stated that he had reviewed the grievance forms maintained at the Lake County Jail, but found "no record or any indication whatsoever that Willie T. Wallace filed any grievance or complied with the formal grievance administrative procedures in regards to the incident which occurred on or about September 30, 2001 . . . ."  (Dragomer Aff. ¶ 8 [Doc. 81].)

  In his memorandum in support of his summary judgment motion, which also was in effect a response to the custody officers' summary judgment motion, Mr. Wallace stated that he "did file grievances and addressed administrative procedures available to him at L. C. J. prior to filing his complaint[.]"  (Mem. at 22 [Doc. 71].)  Mr. Wallace cited the Court to docket entry #17 in support of his contention that he filed a grievance dealing with his claims.  (*Id.*)  Docket entry #17 contains a grievance from August, 2002, signed by Mr. Wallace.  This grievance stated that on September 30, 2001, the custody officers physically beat Mr. Wallace and asked that senior officials ensure that Officer Brown have no future contact with him or be allowed to carry his mail.  He also stated that he felt "threaten [sic] & intimidated by the presence of offrs. Brown,

3

Blanton, & C. Rodriguez . . . ." Thus, the nature of this grievance filed ten months after the incident was that the custody officers who allegedly used excessive force on Wallace were now retaliating against him. The official response to the grievance was that "[j]udicial proceedings are now over. Officer Brown was addressed with this issue[.] Officers open mail, unless legal, and will continue to do so."

In granting summary judgment to the custody officers, the Court concluded that Mr. Wallace had not presented evidence supporting an inference that he filed a formal grievance dealing with the incident of September 30, 2001 within the time allowed by the Lake County Jail policy. As mentioned, the grievance he cited to the Court was filed over ten months after the incident, well beyond the time allowed for filing grievances and, in any event, it dealt more with claims of retaliation. Moreover, Mr. Wallace did not produce evidence suggesting that he appealed the denial of that grievance to the sheriff, which was a necessary step to exhaust the jail's grievance process for purposes of § 1997e(a). Accordingly, the Court granted summary judgment to the custody officers on the grounds of failure to exhaust.

In his Motion to Correct Error, Mr. Wallace first argues that the Court inadvertently misstated the facts in its summary judgment ruling, and that the question of whether he filed "a grievance inside the Lake County Jail within [72] hours of the date of the incident, being September 30, 2001, by the plaintiff is in fact in actual dispute by the parties . . . ." (Mot. to Correct Error at 3.) He states that he submitted five affidavits in support of his motion for summary judgment and that in his second affidavit he wrote "I did file 'grievances' at the time of the incident." (*Id.* at 6-7.) Mr. Wallace also argues that in his complaint he stated that he had filed grievances and he cites the Court to portions of his deposition located on pages 117, 118,

4

119, 120, 122, 124, and 125, which he asserts support the proposition that he attempted to file a timely grievance. (*Id.* at 7-8.) He also attached a document generated by the Indiana Department of Correction in 2005 to his reply to the custody officers' Response to Motion to Correct Error.

Mr. Wallace's Motion to Correct Error is not a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) because no final judgment has been entered. But it is analogous to a Rule 59 motion, and Rule 59 does not allow a party to submit additional evidence that was known to the party at the time he originally responded to a summary judgment motion. In any event, neither the copy of the grievance Mr. Wallace says he filed in August, 2002, nor the document generated by the Indiana Department of Correction in 2005 has any relevancy to the question of whether he filed a grievance within 72 hours of the incident.

In addition, although Wallace stated in his complaint that he "filed a grievance form and formally informed authorities in writing" (compl. at 4), he cannot rely on such naked assertions in the complaint.[1] Once a party files a motion for summary judgment identifying the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *See Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Federal Rule of Civil Procedure 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and

---

[1] Mr. Wallace also stated in his complaint that he could not send the Court a copy of his grievance because prisoners are not allowed to make copies of grievances and "none returned." (Compl. at 5.) It is interesting to note, however, that Wallace did manage to attach to his motion for summary judgment the grievance that he filed nearly a year after the incident wherein he complained that he was being retaliated against [Doc. 17].

5

admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Accordingly, Mr. Wallace could not rely on statements he made in his complaint to avoid summary judgment.

     Mr. Wallace also asserts that statements in his deposition create a question of fact as to whether he filed a timely grievance.  In his deposition, Mr. Wallace testified that he filed a written grievance complaining about the length of the segregation.  (Pl.'s Dep. at 124-126.)

     Finally, Mr. Wallace asserts that one of his affidavits contains a statement that precluded summary judgment by creating a factual issue as to whether he exhausted his administrative remedies.  Mr. Wallace did not point to this statement or his deposition testimony in any of his submissions prior to entry of summary judgment, nor did he specifically argue in any of his memoranda to the Court that he had filed any grievances prior to the grievance filed in August 2002 – ten months after the incident.  The Court reviewed all of the parties' numerous and voluminous submissions prior to ruling on the cross-motions for summary judgment, but did not notice the one sentence in Mr. Wallace's affidavit to which he refers.  Another review of the record, however, confirms that on the second page of his second affidavit Mr. Wallace stated "I did file 'grievances' at the time of the incident."

     In their Response to the Motion to Correct Error, the custody officers note that they moved to strike Mr. Wallace's affidavits because they contained inadmissible evidence.  The Court denied their motion but stated that it would disregard any inadmissible evidence presented in the affidavits.  The custody officers also suggest in their Response that the sentence Mr. Wallace relies on is an inadmissible statement.  It plainly is not.  Mr. Wallace's statement that "I did file 'grievances' at the time of the incident," is based on his personal knowledge in an area in which he is competent to testify.  Accordingly, it is admissible evidence, and must be considered in reviewing the question of whether Mr. Wallace exhausted his administrative remedies.

     Even though it was buried in one line in a mass of voluminous documents filed with the

6

Court and never referred to in his summary judgment papers, and even though he is first calling the matter to the Court's attention in a motion for reconsideration, this Court will nonetheless give Mr. Wallace the benefit of the doubt.  We thus will assume that Mr. Wallace attempted to file a grievance within the seventy-two hour time limit established by the jail.  The Court must accept as true Mr. Wallace's sworn deposition testimony and statement from his affidavit that he filed grievances on unspecified dates near the time of the incident, and Deputy Warden Dragomer's sworn statement that there is no record of Mr. Wallace having timely submitted a grievance regarding this incident.  Therefore, accepting these statements as true, the Court must assume that Mr. Wallace did file a grievance near the time the incident occurred, but that it somehow went astray or that jail officials lost or misplaced it.

There has been considerable controversy on how to determine whether a prisoner has filed a grievance when facility officials say that they never received it.  Courts recognize that prisoners may assert that they attempted to file a grievance when they did not, but they also recognize that grievances may go astray or institutional officials may lose or misplace grievances that prisoners have properly submitted.  The most recent case dealing with this question is *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006), in which the Seventh Circuit concluded that "the potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the prison authorities do not provide them with means for verification." *Id.* at 813.

In *Dole*, the prisoner asserted, as Mr. Wallace now seeks to do, that he submitted a grievance before the deadline passed but never heard back from prison officials. *Id.* at 807.  When Dole inquired about the grievance, prison officials told him they had no record of receiving it, without telling him what to do next. *Id.* at 807-08.  Although the grievance board would accept untimely grievances, the officials did not advise Dole to file another grievance stating that his original had been lost or misplaced. *Id.*  The district court granted summary judgment to the prison officials based on the exhaustion doctrine; the Seventh Circuit Court of Appeals reversed.

*Id.* at 808, 813.

The Seventh Circuit noted that in each case where a prisoner had been found not to have exhausted, "unlike this one, the *prisoner's* mistake triggered the exhaustion requirement." *Id.* at 811 (emphasis in original, citations omitted).  The Seventh Circuit concluded that "the misstep in Dole's case was entirely that of the prison system.  Dole could not maintain control of his complaint once the guard picked it up." *Id.* at 810.  Moreover, Dole "had no means of being alerted that the ARB had not received his appeal in time to file a new, timely complaint; Illinois has no receipt system for prisoner mail." *Id.*

In *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005), the Seventh Circuit held that a plaintiff, who filed "many" unanswered grievances, *id*. at 680 n.1, and who was told by prison officials that grievances sometimes get "torn up," *id.* at 678, had met the exhaustion requirement because the regulations did not instruct a prisoner on what to do when prison officials did not answer his grievance within the time frame prescribed in the regulations, *id.* at 682.  In *Dole,* the Seventh Circuit concluded that *Brengettcy* was on point:

> This case is analogous.  The regulations were not clear about how to proceed once a timely grievance was lost.  Perhaps the regulation governing untimely grievances was inapplicable here, because Dole's grievance was not *untimely*, but instead a timely complaint that was never received.  By properly mailing his ARB complaint, alerting the ARB that the complaint was mailed, and filing suit only after the ARB failed to clarify what he should do next, Dole had done all that was reasonable to exhaust his administrative remedies.

*Dole*, 438 F.3d at 811-12 (emphasis in original).  Thus, "[b]ecause Dole took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled, in the factual context of this case, he has exhausted his administrative remedies under the PLRA." *Id.* at 813.

In this case, as stated above, we construe Deputy Warden Dragomer's statement that the jail records do not contain a grievance from Wallace to mean that for some innocent reason the

grievance was filed but somehow went astray. The question before the Court then is whether Mr. Wallace's statement that he did file "grievances" at the time of the incident means that he did all that is reasonable to exhaust his administrative remedies. We find that he did not.

The Seventh Circuit in *Dole*, upon finding that the prisoner had exhausted his administrative remedies even though the grievance was lost, relied in part on the fact that after a period of time, Dole contacted grievance officials to find out why he had not heard from them. Because Dole followed up on his grievance, thus informing prison officials that he had attempted to submit a grievance, and because prison officials did not advise him how to proceed when they told him they had not received his grievance, the Seventh Circuit concluded that "[b]y properly mailing his ARB complaint, alerting the ARB the complaint was mailed, and filing suit only after the ARB failed to clarify what he should do next, Dole had done all that was reasonable to exhaust his administrative remedies." *Id* at 812. The same is true for *Brengettcy* where the petitioner filed several grievances that were ignored and the court found that this was all that could have been reasonably expected of him. 423 F.3d at 680, 682.

By contrast, in this case, Mr. Wallace did not state in his affidavit that he followed up on his grievance by asking why he had not heard from jail officials. Nor does he point to any evidence in the record that would support a conclusion that he did so. The only thing he points to is a grievance he filed nearly a year later in which he does not complain about the excessive use of force but instead raises concerns about retaliation. [*See* Doc. 17.] Moreover, nowhere in the later-filed grievance does Wallace reference the grievance that he says he timely filed within 72 hours of the incident. Mr. Wallace's situation is thus distinguished from *Dole* and *Brengettcy* where the plaintiffs dutifully followed up their grievances by contacting jail officials to see why they had not heard back from them. Thus, because Mr. Wallace did not inquire as to the status of his grievance, Lake County Jail officials, unlike the prison officials in *Dole*, had no notice that his grievance had gone astray. Accordingly, this appears to be a case in which the prisoner's

9

mistake triggers the exhaustion requirement, rather than a mistake by jail officials that results in the exhaustion requirement being waived.  The Court therefore denies Plaintiff's Motion to Correct Error.

## II. Plaintiff's Motion Requesting Pretrial Scheduling Order

Mr. Wallace alleged in his complaint that after his altercation with the custody officers, Defendant Buncich was responsible for his being removed from general population and placed in a segregation unit for two months, thereby punishing him without due process of law.  The Court denied summary judgment on this claim, and Mr. Wallace has requested that the Court issue a pretrial scheduling order.  In the body of this Motion, however, Mr. Wallace states facts that require the Court to revisit the decision to allow his claim against Defendant Buncich to continue.  Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court shall dismiss a prisoner's *in forma pauperis* action "*at any time* if the court determines that . . . [the action] . . . fails to state a claim on which relief may be granted[.]"  (emphasis added).

Mr. Wallace's status at the time he was segregated from general population is crucial to resolving his due process claim.  Not every "change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  A convicted prisoner may be segregated from general population without due process unless the conditions "give rise to protection by the Due Process Clause of its own force" or "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  If, on the other hand,  Mr. Wallace was a pretrial detainee, he was entitled to due process before being punished.  *See Whitford v. Boglino*, 63 F.3d 527, 531 n.4 (7th Cir. 1995) (*Sandin v. Conner* "does not apply to pretrial detainees, who may not be punished without due process of law regardless of state regulations.").

Mr. Wallace stated in his memorandum in support of his summary judgment motion that

10

he was a federal prisoner who was brought to the Lake County Jail as a result of a request he filed pursuant to the Interstate Agreement on Detainers Act. (Mem. at 2.) He further stated that on September 30, 2001, when he was placed in segregation, he was "a federal prisoner, yet regarded as a pre-trial detainee." (*Id.*) This Court noted in its Order dealing with the parties' summary judgment motions that:

> If Mr. Wallace was convicted on federal charges before his arrival at the Lake County Jail, then he was a convicted prisoner even if he was still facing unresolved state criminal charges against him. The court cannot determine from the evidence before it if Mr. Wallace was a convicted federal prisoner when he came to the jail and because Mr. Wallace is the moving party, it must "extract all reasonable inferences from the evidence in the light most favorable to" Sheriff Buncich as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586.

(3/23/05 Ord. at 11-12.)

Because it could not determine if Mr. Wallace was a pretrial detainee, the Court stated in its Order that it need not reach the question of whether his placement in segregation was punitive or whether it was a security measure that did not require due process. *Zarnes v. Rhodes,* 64 F.3d 285, 291 & n.5 (7th Cir. 1995); *Zimmerman v. Tippecanoe Sheriff's Dep't*, 25 F. Supp. 2d 915, 921 (N.D. Ind. 1998) (holding a pre-trial detainee in administrative segregation where the segregation unit was more secure and the sheriff believed that the inmate constituted a security risk did not violate the due process clause).

In his Motion Requesting Pretrial Scheduling Order, Mr. Wallace has now clarified that he was in fact a convicted federal prisoner at the time of the incident:

> Although the aforementioned phrases held in the Court's Order was ambiguous to the plaintiff with respect to the Court's emphasized inability to determine from the evidence if Mr. Wallace was in fact a [convicted] federal prisoner. Wallace was in fact so.

\* \* \*

Since Wallace was already a convicted federal prisoner on September 30, 2001,

11

> Wallace's placement in segregation at the Lake County Jail with respect to this incident was never a security measure issue, and thus this Court should have decided on such.

(*See* Mot. Requesting Pretrial Scheduling Ord. at 3-4 (alteration in original).)  Mr. Wallace also stated in his Motion that this Court should have been able to determine that he was a convicted federal prisoner because a document he submitted to the Court:

> specifically shows Wallace prior to being transported to the Lake County Jail as a prisoner at F.C.I. Manchester . . . F.C.I. has never housed pretrial detainees, only [convicted] prisoners, an a reasonable inference could have been drawn by the Court from said document that Wallace was a [convicted] prisoner prior to and subsequent September 30, 2001.

(*Id.* at 3 (alterations in original).)  These statements are fatal to his claim against Defendant Buncich.

The tenor of Mr. Wallace's Motion Requesting Pretrial Scheduling Order suggests that he believes convicted prisoners are entitled to more due process than pretrial detainees.  As already noted, however, this is not the case.  Pretrial detainees are entitled to due process before being punished, *Whitford*, 63 F.3d at 531 n.4, though they may be segregated for security reasons, *Zarnes*, 64 F.3d at 291.  But jail officials need not afford due process to a convicted prisoner before segregating him from the general population for punitive reasons unless the conditions "give rise to protection by the Due Process Clause of its own force" or "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" *Sandin*, 515 U.S. at 484.  The *Sandin* Court held that the "[prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," and that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id.* at 485-86.

Based on the representations Mr. Wallace makes in his Motion Requesting Pretrial

12

Scheduling Order, the Court now concludes that he was a convicted federal prisoner when he was housed at the Lake County Jail.  Therefore, Mr. Wallace's two-month placement in disciplinary segregation did not present "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Id*. at 486 (holding that sentencing a prisoner to thirty days of disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").  And, in any event, Mr. Wallace has not alleged any atypical or significant hardship in his complaint.  *Id.* at 484.  Had this Court been aware that Mr. Wallace was a convicted prisoner when the complaint was filed, it could have dismissed the procedural due process claim pursuant to the screening process in 28 U.S.C. § 1915A.  The due process claim has survived this long only because the pleadings were ambiguous as to Mr. Wallace's status and the parties had not submitted evidence clarifying his status.

Defendants did not present the due process issue to the Court in their summary judgment motion.[2]  But, pursuant to § 1915(e)(2)(B)(ii), the Court is required to dismiss a claim *sua sponte* at any time it determines that the claim states no claim upon which relief can be granted.  Because Mr. Wallace has now clarified his status by stating that he was a convicted prisoner, the Court denies Plaintiff's Motion Requesting Pretrial Scheduling Order as moot, dismisses the due process claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismisses Defendant Buncich from the lawsuit.

---

[2] The custody officers filed a summary judgment motion that did not deal with this issue as Plaintiff did not allege that they violated his due process rights.  Later Buncich and the custody officers filed a joint motion seeking to add Buncich as a movant to the custody officers' summary judgment motion.  Defendants' joint motion "incorporate[d], by reference, any and all arguments, statements and contentions as made and stated in defendants' Motion for Summary Judgment and documents and pleadings filed in support thereof." (Jt. Notice of Incorporation at 2 [Doc. 89].)  This motion was meaningless, however, because Buncich was not a defendant on the excessive use of force claim and the motion for summary judgment brought by the custody officers did not address the procedural due process claim.

**III.  Defendant Buncich's Petition for Review and Objection to Magistrate's Order of March 21, 2005 and Plaintiff's Motion to be Informed**

Because the Court has granted summary judgment in favor of the custody officers, and is dismissing the claims against Buncich, it denies Defendant Buncich's Petition for Review and Objection to Magistrate's Order of March 21, 2005 and Plaintiff's Motion to be Informed as moot.

## CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** Plaintiff's Motion to Correct Error [Doc. 119] and reaffirms its earlier holding that Plaintiff's excessive use of force claim against Defendants Julian Brown, C. Rodriguez, and R. Blanton is **DISMISSED WITHOUT PREJUDICE**;

(2) **DENIES AS MOOT** Plaintiff's Motion Requesting Pretrial Scheduling Order [Doc. 132];

(3) **DISMISSES** Plaintiff's claim that he was denied due process before being placed in segregation pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and **DISMISSES** Defendant Buncich from the lawsuit;

(4) **DIRECTS** the clerk to enter judgment in favor of Defendants and against Plaintiff; and

(5) **DENIES AS MOOT** Defendant Buncich's Petition for Review and Objection to Magistrate's Order of March 21, 2005 [Doc. 117] and Plaintiff's Motion to be Informed [Doc. 129].

**SO ORDERED.**

ENTERED: March 31, 2006

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT

15